USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: __9/29/22__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**DELROY ASKINS,**

                           **Plaintiff,**

    -against-

**PHILIP WEINBERG ET AL.,**

                          **Defendants.**

**19-CV-8793 (ALC)**

**OPINION & ORDER**

---

**ANDREW L. CARTER, JR., United States District Judge:**

*Pro se* plaintiff Delroy Askins brings this action against Defendants Philip Weinberg, Erica Joshua, Ms. Smith, Mr. Jackson, Ms. Diaz, and STRIVE International, Inc. ("STRIVE"), alleging claims, construed liberally, of disability discrimination under Title I, Title II, and Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, and under the Rehabilitation Act, 29 U.S.C. § 794(a). Defendants now move to dismiss Plaintiff's claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court GRANTS Defendants' motion.

## BACKGROUND

### I. Factual Background

When determining whether to dismiss a case, the court accepts as true all well-pleaded factual allegations in the Complaint and draws all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Pursuant to that standard, this recitation of facts is based on Plaintiff's first amended complaint.

Plaintiff is a paraplegic who requires the use of a wheelchair for all daily activities. ECF No. 43 ("FAC") ¶ 1. Defendant STRIVE is a non-profit corporation "in the business of providing job training to the public." *Id*. ¶ 3. STRIVE provides job training services that would otherwise be provided by government agencies, and in 2019, 71 percent of STRIVE'S funding came from government grants. *Id*. ¶ 4.

On April 30, 2018, Plaintiff attended an information session for a job training program held at STRIVE's Harlem office. *Id*. ¶ 5. Upon entrance, Plaintiff "found it very difficult" to access the office in his wheelchair. *Id*. ¶ 6. While the hallways were wide enough to accommodate wheelchair-bound individuals like Plaintiff, "the furniture in the lobby was arranged in such a manner that there was no clear or practical path for someone in a wheelchair to approach the reception desk." *Id*. The complaint specifies that the tables and chairs in the lobby "did not provide sufficient passageway for wheelchair-bound individuals." *Id*. Further, STRIVE employees did not "seem[] interested" in assisting Plaintiff to maneuver through the office, and Plaintiff relied upon his caregiver to "remove and replace furniture obstacles" and assist him around the office. *Id*. ¶ 7.

The application process for the program involved an examination and a group interview in front of a panel of interviewers. *Id*. ¶¶ 8, 11. Plaintiff alleges that Defendant Joshua, whom Plaintiff identifies as "staff person," interrupted his exam, "made him very uncomfortable," and yelled at him "to hurry up and finish the exam." *Id*. ¶ 9. After passing the exam, Plaintiff returned to STRIVE on May 9, 2018 for the panel interview. *Id*. ¶ 10. The STRIVE staff treated him with "an attitude of hostility and disparate treatment." *Id*. ¶ 11. Defendant Joshua asked Plaintiff to remain in the lobby while she brought the other interviewees to a different location within the office; and

when she brought Plaintiff to the location, she "placed [Plaintiff] in a space that was confining," which also "made [Plaintiff] feel uncomfortable because it was separate and away from the rest of the enrollees." *Id*. ¶¶ 12, 13. He alleges that he was "separated out from the rest of the group based only on his status as a wheelchair-bound person." *Id*. ¶ 13. When Plaintiff asked if he could be moved closer to the group, Joshua "waved her hands dismissively." *Id*. ¶ 14.

Plaintiff alleges that the interviewers also "treated [him] differently from the other enrollees." *Id*. ¶ 16. The panelists posed follow-up questions to the other interviewees, but asked no follow-up questions to Plaintiff. *Id*. ¶¶ 17–18. Further, Plaintiff had two negative interactions with the interviewers. *Id*. ¶¶ 18–20. Plaintiff was not admitted into the program because, according to a STRIVE staff member, "the panelists believed Mr. Askins was looking for a job, not a training program." *Id*. ¶ 22.

## II.     Procedural Background

On September 28, 2018, Plaintiff filed an administrative complaint against STRIVE with the New York State Division of Human Rights ("NYSDHR"). On March 16, 2019, the NYSDHR dismissed the complaint for lack of probable cause. Plaintiff did not appeal that decision. On September 20, 2019, Plaintiff initiated this action. After Defendants moved to dismiss the original complaint on October 8, 2020, Plaintiff filed an amended complaint on March 12, 2021.

## STANDARD OF REVIEW

Rule 12(b)(6) allows the court to dismiss a claim if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss, the court must "accept as true all factual statements alleged in the complaint and draw all reasonable

inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Claims should be dismissed when a plaintiff has not pled enough facts that "plausibly give rise to an entitlement to relief." *Id.* at 679. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. While not akin to a "probability requirement," the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Accordingly, where a plaintiff alleges facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 557 (2007)).

Considering this standard, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted). In particular, "the pleadings of a *pro se* plaintiff must be read liberally and should be interpreted to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (internal citations and quotation marks omitted).

## DISCUSSION

The Court understands the amended complaint as asserting claims of discrimination against Defendants under Titles I, II, and III of the ADA and the Rehabilitation Act. After careful review, the Court dismisses Plaintiff's claims for failure to state a claim upon which relief can be granted.

I. **Collateral Estoppel**

As a preliminary matter, Plaintiff's claims are not collaterally estopped. Defendants argue that Plaintiff's claims are based on the same events and allegations at at issue in his NYSDHR complaint and therefore are barred. The Court disagrees. In the Second Circuit, "a claimant may bring federal ADA and Title VII claims even if they have been rejected in a state administrative proceeding," and federal courts in this district "do not give preclusive effect to state agency decisions unless they have been reviewed in a state court proceeding." *Cortes v. MTA New York City Transit*, 802 F.3d 226, 231 (2d Cir. 2015). There is no collateral estoppel here as there was no state court review of the administrative dismissal of Plaintiff's case.

II. **ADA Title I Claim**

Defendants argue that Plaintiff's Title I claim must be dismissed for failure to exhaust administrative remedies. The Court agrees. "Title I explicitly addresses employment discrimination, prohibiting discrimination based on a person's disability with respect to 'job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Transp. Workers Union of Am., Loc. 100, AFL-CIO v. New York City Transit Auth*., 342 F. Supp. 2d 160, 164 (S.D.N.Y. 2004) (quoting 42 U.S.C. § 12112(a)). ADA Title I plaintiffs, like Title VII Plaintiffs, are required to exhaust their administrative remedies before bringing a claim in federal court—among other things, they must receive a right-to-sue letter from the U.S. Equal Employment Opportunity Commission ("EEOC"). *Id*; *see* 42 § 12117(a) (incorporating "[t]he

powers, remedies, and procedures set forth in [42 U.S.C.] sections 2000e–4, 2000e–5, 2000e–6, 2000e–8, and 2000e–9").

Plaintiff concedes in his opposition that he did not receive a right-to-sue letter. In such situations and in Title I's analogue under Title VII, courts will dismiss the unexhausted claim. *See, e.g.*, *Davis v. Metro N. Commuter R.R.,* No. 21-CV-387, 2022 WL 2223018, at *8 (S.D.N.Y. June 21, 2022) ("Where a plaintiff fails to provide a right-to-sue letter from the EEOC and does not allege that plaintiff received or attempted to procure such letter, courts have dismissed the Title VII claims."); *Staten v. Patrolmen's Benevolent Ass'n of City of New York, Inc.*, 282 F. Supp. 3d 734, 742 (S.D.N.Y. 2017) (dismissing claims where plaintiff did not receive a right-to-sue letter before bringing suit) *aff'd*, 736 F. App'x 17 (2d Cir. 2018).

Additionally, Title I is only applicable to employees and the discriminatory practices of their employers. *See, e.g.*, *Karupaiyan v. CVS Health Corp.*, No. 19-CV-8814, 2021 WL 4341132, at *9 (S.D.N.Y. Sept. 23, 2021) ("It is well established that an employer-employee relationship is a primary element of an employment discrimination claim under . . . the ADA . . . ."). "An individual is not an 'employee' within the meaning of Title I of the ADA and the Rehabilitation Act, and cannot state a plausible claim for employment discrimination under those statutes, in the absence of either direct or indirect economic remuneration or the promise thereof." *Sandler v. Benden*, No. 15-CV-1193, 2016 WL 9944017, at *15 (E.D.N.Y. Aug. 19, 2016), *aff'd*, 715 F. App'x 40 (2d Cir. 2017) (quoting *O'Connor v. Davis*, 126 F.3d 112, 116 (2d Cir. 1997)); *see also United States v. City of New York*, 359 F.3d 83, 92 (2d Cir. 2004) ("Th[e] remuneration need not

6

be a salary, but must consist of substantial benefits not merely incidental to the activity performed." (internal quotation marks and citations omitted)).

Here, Plaintiff has not alleged that he is an employee of STRIVE, nor could he as he does not receive compensation or benefits from STRIVE. Thus, Plaintiff cannot state a claim for employment discrimination under Title I. *See Heller v. Consol. Rail Corp.*, 331 F. App'x 766, 768 (2d Cir. 2009)("[A]s appellant did not allege that either the EEOC or the Railroad Retirement Board was his employer, he could not state a claim against them under the provisions of . . . the Americans with Disabilities Act . . . which apply only to discriminatory practices by an employer."); *Sandler*, 2016 WL 9944017, at *15 ("Since plaintiff did not receive any such compensation or benefits from either [defendants], she cannot state a plausible claim for employment discrimination . . . under either the ADA or the Rehabilitation Act against them.").

Defendants also argue that Plaintiff has failed to allege an adverse action. Under Title I, a plaintiff must demonstrate that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (internal quotation marks and citations omitted).

To the extent that Plaintiff can establish an otherwise sufficient Title I claim, the Court finds that Plaintiff's allegations regarding an adverse action pass muster at this stage. An adverse employment action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities and might be indicated by a termination of employment, a demotion evidenced by

7

a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Patrolmen's Benevolent Ass'n of City of N.Y. v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002) (internal quotation marks and citations omitted). Construing Plaintiff's claim liberally as it must, the Court concludes that Plaintiff alleges that his rejection from the job employment program is the adverse action. Assuming *arguendo* that Plaintiff is considered an employee and is not barred from bringing this claim due to his failure to exhaust administrative remedies, then this allegation suffices. Indeed, in this context, rejection from the program is perhaps the most adverse action a plaintiff could suffer.

However, as Plaintiff has failed to exhaust his administrative remedies and has failed to allege an employer-employee relationship, the Court dismisses Plaintiff's Title I claim.

### III.   ADA Title II Claim

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 § 12132. As defined in the ADA, a "public entity" is "any State or local government," "any department, agency, special purpose district, or other instrumentality of a State or States or local government," or "any commuter authority." 42 U.S.C. § 12131(1)(A)-(C); *accord Pierce v. Fordham Univ., Inc.*, No. 16-CV-2078, 2017 WL 2589378 at *2 (2d Cir. June 15, 2017) ("Title II applies only to state and local governments, their instrumentalities, and commuter authorities.").

Plaintiff argues that STRIVE is an "instrumentality" of government because it is "a non-profit contracted by government entities to provide job training that government entities would otherwise need to provide." ECF No. 67 at 4. Plaintiff offers no support for this claim and the Court declines to sustain it.

To qualify as a "public entity," it is not enough to receive government funding and provide services that the government also or would otherwise provide. *See, e.g.*, *Green v. City of New York*, 465 F.3d 65, 79 (2d Cir. 2006) (concluding that " 'instrumentality' is . . . best read as referring to a creature of a state or municipality" and upholding dismissal of Title II claim because a "private hospital performing services pursuant to a contract with a municipality even if it does so according to the municipality's rules and under its direction, is not a creature of any governmental entity"); *Wiltz v. New York Univ.*, No. 19-CV-03406, 2019 WL 8437456, at *7 (S.D.N.Y. Dec. 23, 2019), *report and recommendation adopted*, 2020 WL 614658 (S.D.N.Y. Feb. 10, 2020) ("It is well settled that private universities and private hospitals are not public entities subject to Title II, even if they receive government funding."); *Sandler*, 2016 WL 9944017, at *16 (holding that "not-for-profit corporation organized under the laws of the State of New York . . . [and] a recipient of federal financial assistance" was not a public entity); *Lopez v. City of New York*, No. 17-CV-3014, 2017 WL 4342203, at *14 & n.23 (S.D.N.Y. Sept. 28, 2017), *report and recommendation adopted*, 2018 WL 1371164 (S.D.N.Y. Mar. 15, 2018) (holding that non-profit shelter operator that contracted with the New York City Department of Homeless Services to operate a shelter was not a public entity).

Thus, as Plaintiff has failed to adequately allege that STRIVE is a public entity, the Court dismisses Plaintiff's Title II claim.

## IV. ADA Title III CLAIM

Title III of the ADA prohibits discrimination against disabled individuals "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). Under Title III, a plaintiff must demonstrate that "(1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94–95 (2d Cir. 2012) (internal quotation marks and citation omitted). Discrimination under the third prong includes "a failure to make reasonable modifications in policies, practices, or procedures." 42 U.S.C. § 12182(b)(2)(A)(ii).

As Plaintiff acknowledges in his opposition, Plaintiff seeks only monetary damages, and injunctive relief is the only available remedy under Title III. *See Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004) ("Monetary relief . . . is not available to private individuals under Title III of the ADA."). Plaintiff's opposition re-lists SRIVE's alleged discriminatory acts, but does not request specific injunctive relief. Plaintiff's Title III claim is dismissed for failure to request the proper relief.

As the Court grants *pro se* Plaintiff permission to file an amended complaint and thus amend this deficiency, the Court will continue to analyze Plaintiff's Title III claim.

10

Plaintiff's opposition appears to advance a "failure to accommodate" theory of discrimination under Title III. However, Plaintiff does not identify specific accommodations, and more importantly, Plaintiff does not allege that he requested, and was subsequently denied, an accommodation from Defendants. For this reason, the Court denies Plaintiff's failure to accommodate claim. *See Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 848 F. Supp. 2d 460, 466, 69 (S.D.N.Y. 2012) ("Indeed, Title III's requirement that private entities make 'reasonable accommodations' for disabled individuals would be rendered meaningless if the entity had no basis for knowing . . . what accommodations the examinee was seeking . . . .[T]he Court can find no evidence in the record that [the plaintiff] notified [the defendant] of his disability or requested accommodation . . . .Thus, the Court concludes that no rational jury could find that [the defendant] discriminated against [the plaintiff].").

Defendants also argue that Plaintiff fails to establish a claim of disparate impact discrimination under Title III. The Court disagrees and finds that notwithstanding the Title III claim's other deficiencies at this point, Plaintiff's allegations survive at this stage under the liberal standard afforded to *pro se* plaintiffs.

In order to establish a prima facie case of disparate impact, the plaintiff must demonstrate "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016) (internal quotation marks and citations omitted). A plaintiff need not prove discriminatory intent and must only show that the neutral practice "actually or predictably results in . . . discrimination." *Quad*

11

*Enterprises Co., LLC v. Town of Southold*, 369 F. App'x 202, 206 (2d Cir. 2010) (internal quotation marks and citations omitted).

Here, Plaintiff has alleged a number of neutral practices carried out by Defendants: for example, separating Plaintiff from the other interviewees while the interviewees were brought into the examination room, placing Plaintiff in a location that was physically uncomfortable to inhabit and apart from his peers, and asking limited follow-up questions of Plaintiff. While the complaint does not consistently and explicitly state the effect of these practices upon Plaintiff, Plaintiff "essentially claims that due to his disability, this practice caused an adverse impact on Plaintiff. *Williams v. Barometre*, No. 20-CV-7644, 2022 WL 903068, at *17 (S.D.N.Y. Mar. 28, 2022) (cleaned up). Thus, at this early stage, Plaintiff satisfies both elements.

Further, "at the pleadings stage, it is reasonable to expect that plaintiffs pleading disparate impact claims must only include at least one allegation that raises an inference of such disparity—one sufficient to put the defendants on notice regarding the basis for the plaintiffs' belief in a disparate effect." *Id*. (cleaned up). Thus, even though the Complaint only specifies Plaintiff, "it is a reasonable inference that [interviewees] with his particular type of disability were adversely affected in an analogous way by [STRIVE]'s alleged practice." *Id*. (cleaned up). Accordingly, the Court finds that Plaintiff's disparate impact claim survives—albeit barely—Defendants' motion to dismiss in the event Plaintiff provides an appropriate request for relief.

However, as Plaintiff has not alleged the proper relief, Plaintiff's ADA claims are dismissed in their entirety.

    **V.**     **Rehabilitation Act**

Plaintiff also brings his claims under the Rehabilitation Act. The Court construes Plaintiff's Rehabilitation Act claim as arising under Section 504, which protects a "qualified individual with a disability" from exclusion of participation, denial of benefits, or subjection to discrimination based on the individual's disability "under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Courts often do not analyze Rehabilitation Act claims separately from ADA claims because the Rehabilitation Act "prohibits the same type of discrimination" as the ADA. *Francis v. City of Meriden*, 129 F.3d 281, 283 (2d Cir. 1997). However, the two statutes do differ in scope. Title II applies to public entities while Section 504 applies to institutions "receiving Federal financial assistance." 29 U.S.C. § 794(a)). Thus, like with Title II, "to state a *prima face* claim under [Section 504 of the Rehabilitation Act], a plaintiff must establish (1) that she is a qualified individual with a disability; (2) that she was excluded from participation in . . . programs or activities [of an entity receiving federal financial assistance] or was otherwise discriminated against . . . ; and (3) that such exclusion or discrimination was due to her disability." *Davis v. Shah*, 821 F.3d 231, 259 (2d Cir. 2016) (internal quotation marks and citation omitted).

As discussed above, Plaintiff has not established that STRIVE is a public entity and thus Title II of the ADA does not apply. However, it is possible that STRIVE would be covered by Section 504, if it receives federal financial aid. The Complaint alleges that "STRIVE participates in several federal . . . programs" and that STRIVE receives "Government Grants." Compl. ¶ 4. Liberally construing the allegations in the Complaint to allege federal support received by STRIVE, the Court finds that, at this stage, Plaintiff has sufficiently alleged that STRIVE is an entity governed by the Rehabilitation Act.

However, Plaintiff's Rehabilitation Act claim fails with respect to the second difference between the ADA and the Rehabilitation Act. A plaintiff is only entitled to relief under the Rehabilitation Act if the plaintiff, "*solely* by reason of her or his disability [is] excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Goe v. Zucker,* 43 F.4th 19, 35 (2d Cir. 2022) (quoting 29 U.S.C. § 794(a)) (emphasis added). Here, the complaint does not allege that the violations occurred solely because of Plaintiff's disability. In fact, Plaintiff alleges that STRIVE informed him that STRIVE rejected him because "the panelists believed Mr. Askins was looking for a job, not a training program." *Id*. ¶ 22.

Accordingly, the Court denies Plaintiff's Rehabilitation Act Claim.

## VI.    Individual Defendants

The Court dismisses Plaintiff's claims against the individual defendants as there is no individual liability under Titles I and II of the ADA or the Rehabilitation Act. *See Fox v. State Univ. of New York*, 497 F. Supp. 2d 446, 449 (E.D.N.Y. 2007) ("The plaintiff's claims against the individual defendants in their individual capacity must be dismissed because there is no individual liability under Title I or Title II of the ADA . . . ."); *Zucker*, 43 F.4th at 35 (dismissing claims against individual defendants under the Rehabilitation Act).

Under Title III of the ADA, "the question of whether a person is a proper defendant under the ADA turns [ ] on . . . whether the defendant *owns, leases,* or *operates* a place of public accommodation within the meaning of the ADA." *Coddington v. Adelphi University*, 45 F.Supp.2d 211, 215 (E.D.N.Y. 1999). To operate a place of public accommodation, an individual must be

"responsible for making decisions regarding disabled [persons]." *Id*. at 217. Plaintiff has not alleged any facts demonstrating that any of the individual defendants "exerted any influence over [STRIVE]'s accommodation policies," or that it is an individual, rather than the "institution that has the power to make any accommodations required by law." *Schenk v. Verizon*, No. 10-CV-6281, 2011 WL 1044560, at *1 (S.D.N.Y. Mar. 17, 2011); *see also Coddington*, 45 F. Supp. at 217.

Accordingly, the Court dismisses Plaintiff's claims against the individual defendants under the ADA and the Rehabilitation Act for failure to state a claim on which relief may be granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. As courts should, "as a general matter, liberally permit *pro se* litigants to amend their pleadings unless amendment would be futile," and as Plaintiff has yet to amend his complaint following a decision on the merits, this dismissal is without prejudice. *Terry v. Inc. Vill. Of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016). If Plaintiff opts to file an amended complaint, he must do so within 30 days of this Opinion. The amended complaint shall address the deficiencies addressed in this opinion, and, as it will replace the current complaint, must include all claims and factual allegations, not only new claims and allegations. Failure to file an amended complaint within 30 days will result in a dismissal with prejudice.

The Clerk of Court is respectfully requested to terminate the motions at ECF No. 59 and to mail a copy of this Order to *pro se* Plaintiff.

**SO ORDERED.**

**Dated: September 29, 2022**
       **New York, New York**

                                        **ANDREW L. CARTER, JR.**
                                        **United States District Judge**

16